UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

MATTHEW SANDERS, III                                                               PLAINTIFF

VERSUS                                             CIVIL ACTION NO. 3:18CV399-HTW-RHW

NANCY A. BERRYHILL                                                                DEFENDANT

**PROPOSED FINDINGS OF FACT AND RECOMMENDATION**

Before the Court is Plaintiff Matthew Sanders, III's complaint seeking review of the final decision of the Commissioner of Social Security denying Plaintiff's claim for disability insurance benefits. Plaintiff alleges disability beginning January 11, 2017, due to depression, ulcer colitis, migraines, post-traumatic stress disorder (PTSD), and anxiety. Doc. [5] at 5, 186. Plaintiff was 39 years old at the alleged onset of disability with a high school education, some college, and past relevant work experience as a shift supervisor, corrections officer, academic instructor, teacher, and school bus driver. *Id.* at 27, 40-41.

Plaintiff's application for benefits was denied initially and on reconsideration. *Id.* at 105-08. He requested and was granted a hearing before an Administrative Law Judge (ALJ). *Id.* at 34-77, 154. The ALJ issued a decision on February 9, 2018, finding Plaintiff had severe impairments of PTSD, mood disorder with a history of marijuana use, migraines, arthritis, obesity, and hallux vulgus with ankle and foot pain. *Id.* at 16. Despite these severe impairments, the ALJ determined that Plaintiff maintained the residual functional capacity (RFC) to perform a restricted range of light work. *Id.* at 19. According to the ALJ's RFC assessment, Plaintiff could occasionally climb, balance, stoop, kneel, crouch, or crawl; can perform only simple routine tasks; and can have no more than occasional interaction with the public or coworkers. *Id.* The ALJ further found Plaintiff was unable to perform his past relevant work; however, relying in

part on testimony from a vocational expert, the ALJ determined that Plaintiff could perform jobs that exist in significant numbers in the national economy; namely assembler, hand packer, and interceptor-checker. *Id.* at 27-28. Accordingly, the ALJ concluded that Plaintiff was not disabled. *Id.* at 30.

Plaintiff requested a review of the ALJ's decision from the Appeals Council. *Id.* at 4-9. The Appeals Council denied the request. *Id.* Plaintiff then filed the instant complaint seeking judicial review of the ALJ's decision. The parties have filed motions and briefs in support of their respective positions. Doc. [8] - [12]. In his motion for summary judgment, Plaintiff argues that the ALJ failed to properly evaluate and weigh the opinion of Plaintiff's treating psychiatrist, Suresh Alexander, MD.

## **Law and Analysis**

The federal district court reviews the Commissioner's decision only to determine whether the final decision is supported by substantial evidence and whether the Commissioner used the proper legal standards to evaluate the evidence. *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999); *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995). If the court determines the Commissioner's decision to be supported by substantial evidence, then the findings are conclusive and the court must affirm the decision. *Richardson v. Perales*, 402 U.S. 389, 390 (1971). *See also* 42 U.S.C. § 405(g). This standard requires supporting evidence that is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The court is not permitted to "reweigh the evidence in the record, nor try any issues de novo, nor substitute our judgment for the judgment of the [Commissioner], even if the evidence preponderates against the [Commissioner's] decision."

*Johnson v. Bowen*, 864 F.2d 340, 343 (5th Cir. 1988). "'Conflicts in the evidence are for the [Commissioner] and not the courts to resolve.'" *Brown*, 192 F.3d at 496 (quoting *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990)). While the court may alter the Commissioner's decision if based upon faulty legal analysis, the court should defer to the Commissioner's legal conclusions if they are within a permissible meaning of the statutory or regulatory language. *Chevron, U.S.A., Inc. v. National Resources Defense Council*, 467 U.S. 837, 843–44 (1984).

A claimant bears the burden of proving the existence of a medically determinable impairment that has prevented the claimant from engaging in substantial gainful employment. 42 U.S.C. § 423 (d)(1)(A); 42 U.S.C. § 423 (d)(5). The Social Security Administration (SSA) utilizes a five-step sequential process to determine whether a claimant is disabled. 20 C.F.R. § 404.1520(a), § 404.920(a). Under this analysis, the ALJ may decide a claimant is disabled if he finds that (1) the claimant is not employed in substantial gainful activity; (2) the claimant has a severe, medically determinable impairment; (3) the claimant's impairment meets or equals one of the listings in appendix 1 to subpart P of § 404; (4) the impairment prevents the claimant from performing any past relevant work; and (5) the impairment prevents the claimant's ability to adjust to performing any other work. *Id.*

The claimant initially bears the burden of proving disability under the first four steps, but the burden shifts to the SSA for the fifth step. *Chapparo v. Bowen*, 815 F.2d 1008, 1010 (5th Cir. 1987). Therefore, if the claimant proves that he is unable to perform past relevant work, the SSA must demonstrate that the claimant can perform another occupation that exists in significant numbers in the national economy. The burden then shifts back to the claimant to establish that he cannot perform this alternative employment. *Id.*

When considering whether a claimant is disabled, the Commissioner considers the medical evidence available, including medical opinions. *See* 20 C.F.R. § 416.927(b). Ordinarily the opinions, diagnoses, and medical evidence of a treating physician should be accorded considerable weight in determining disability. *Perez v. Barnhart*, 415 F.3d 457, 465-66 (5th Cir. 2005); *Newton*, 209 at 455. The treating physician's opinion on the nature and severity of impairments will be given controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence. *Newton*, 209 F.3d at 455. Before declining to give controlling weight to a treating physician, the ALJ must consider the factors set forth at 20 C.F.R. § 404.1527(d)(2): (1) the physician's length of treatment of the claimant; (2) the physician's frequency of examination; (3) the nature and extent of the treatment relationship; (4) the support of the physician's opinion afforded by the medical evidence of record; (5) the consistency of the opinion with the record as a whole; and (6) the specialization of the treating physician. Absent reliable medical evidence from a treating or examining physician controverting the claimant's treating specialist, an ALJ may reject the opinion of the treating physician only if the ALJ performs a detailed analysis of the treating physician's views under the criteria set forth in 20 C.F.R. § 404.1527, 419.927. *Newton*, 209 F.3d at 453. The ALJ is free to assign little or no weight to the opinion of any physician for good cause. *Newton*, 209 F.3d at 455-56. Good cause may permit an ALJ to discount the weight of a treating physician relative to other experts where the physician's evidence is conclusory; is unsupported by medically acceptable clinical, laboratory, or diagnostic techniques; or is otherwise unsupported by the evidence. *Id.* A treating physician's opinion may be rejected when the evidence supports a contrary conclusion. *Martinez*, 64 F.3d at 176.

The existence of an error by the ALJ does not automatically result in the reversal of the Commissioner's decision. "Procedural perfection in administrative proceedings is not required," and a court "will not vacate a judgment unless the substantial rights of a party have been affected." *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988). When an ALJ commits an error, remand "is appropriate only if [plaintiff] shows that he was prejudiced." *Ripley*, 67 F.3d at 557.

In his motion for summary judgment, Plaintiff argues that the ALJ rejected the opinion of his treating psychiatrist (Dr. Alexander) in the absence of any contradictory medical opinion evidence from a treating or examining medical source and failed to conduct the six-factor analysis required by *Newton*. Plaintiff points specifically to Dr. Alexander's opinion letter of October 27, 2017, as proof of disability. Plaintiff also contends that the ALJ misstated Plaintiff's reasons for getting poor sleep. Plaintiff further argues that the ALJ erred when she only considered Plaintiff's mental health records through May 2017, despite the existence of later mental health records.

**Dr. Alexander's Opinion Letter**

In a one-page letter addressed "To Whom It May Concern", Dr. Alexander indicated that Plaintiff receives outpatient treatment for PTSD. According to Dr. Alexander, the condition is permanent with several flare-ups daily, and Plaintiff "continues to battle poor sleep due to reoccurring nightmares, depression, anxiety, irritability, poor concentration, nausea, fatigue, migraine headaches, and memory loss." Doc. [5] at 496. Dr. Alexander opined that "Plaintiff is unable to be gainfully employed due to his diagnosis of Post-traumatic stress disorder and treatment with psychotropic medications." *Id.*

In her decision, the ALJ considered Dr. Alexander's diagnosis and medical opinion. The ALJ acknowledged Dr. Alexander's diagnosis of chronic PTSD, unspecified mood disorder, and

insomnia. *Id.* at 23. In her analysis, the ALJ included PTSD and mood disorder as severe impairments. *Id.* at 16. However, the ALJ noted that "records from the VA show mostly relatively normal mental status evaluations both at mental health and physical examinations." *Id.* at 23. The ALJ specifically considered Dr. Alexander's opinion letter of October 27, 2017, and "assigned some, but not great or controlling weight." *Id.* at 25.

Dr. Alexander's ultimate conclusion that Plaintiff is incapable of gainful employment does not constitute a medical opinion. As the Fifth Circuit has held, a treating physician's conclusion that a claimant is "disabled" or "unable to work" is not considered a medical opinion and therefore is not entitled to controlling weight or any special significance in the ALJ's determination. *Frank*, 326 F.3d at 620. Accordingly, the ALJ did not err in failing to give controlling weight to Dr. Alexander's opinion regarding Plaintiff's employability.

Dr. Alexander's opinion letter does not identify any demonstrable limitation that should have been incorporated into Plaintiff's RFC. As conceded by Plaintiff in his opening brief, Dr. Alexander's opinion letter of October 27, 2017, "does not provide specific vocational limitations" but only speaks to the "severity" of Plaintiff's condition and the occupational impact the symptoms would be expected to have on him for the rest of his life. Doc. [9] at 10. Dr. Alexander's letter corroborates the ALJ's findings in many important respects. Consistent with Dr. Alexander's opinion letter, the ALJ found that Plaintiff suffers from severe impairments of PTSD, mood disorder, and migraine headaches. *Id.* at 16. Moreover, in assessing Plaintiff's mental functioning, the ALJ noted mild limitations in understanding, remembering, or applying information; moderate limitations in interacting with others; moderate limitations in ability to concentrate, persist or maintain pace. *Id.* at 18. The ALJ incorporated these various impairments and limitations into the RFC when she concluded that Plaintiff should be limited to

6

performing only simple, routine tasks, and have no more than occasional interaction with the public or coworkers. *Id.* at 19. Plaintiff does not explain what part of Dr. Alexander's opinion letter the ALJ failed to incorporate into the RFC in the form of greater limitations. This is not surprising given Plaintiff's concession that the opinion letter does not provide any specific vocational limitations.

Dr. Alexander also suggested in his letter that Plaintiff's use of psychotropic medications would prevent him from gainful employment. Setting aside the fact this conclusion regarding Plaintiff's employability is not considered a "medical opinion", the ALJ nevertheless considered the side effects of Plaintiff's medications. The ALJ noted that Plaintiff regularly denied side effects from medication, as reflected in the treatment notes. *See* at 22, 304, 313, 321, 357, 381, 389. The ALJ's reliance on these medical records constitutes substantial evidence in support of the ALJ's decision not to incorporate additional limitations related to the side effects of medication. Although Plaintiff also argues the ALJ should have contacted Dr. Alexander for further clarification regarding his opinion, Plaintiff fails to identify any additional information that might have affected the RFC. In sum, Plaintiff does not identify any prejudice to justify remand based on the ALJ's weighing and consideration of Dr. Alexander's opinion letter of October 27, 2017.

**Plaintiff's Inability to Sleep**

Plaintiff argues that the ALJ mischaracterized the basis for Plaintiff's inability to sleep. In considering a medical note dated May 17, 2017, the ALJ concluded that Plaintiff's newborn baby was keeping him up at night rather than nightmares or flashbacks related to PTSD. Doc. [5] at 25. The medical report in question does not definitively state whether the newborn baby contributed to Plaintiff's poor sleep. Rather, the report states that Plaintiff presented with

complaints of poor sleep. Doc. [5] at 567. He attributed "his poor sleep to difficulties falling asleep and staying asleep." *Id.* Consistent with the ALJ's conclusion, Plaintiff did not mention flashbacks, nightmares, or PTSD symptoms as the cause of his sleeplessness. Instead, Plaintiff reported "he helps out more with his newborn daughter because he's up and down throughout the night." *Id.* The medical report did not expressly attribute lack of sleep to PTSD or any of Plaintiff's other severe impairments; therefore, the ALJ did not commit error by failing to interpret the medical record in such a manner.

At other points in the decision, the ALJ considered Plaintiff's inability to sleep and its potential impact on his RFC. The ALJ questioned the credibility of Plaintiff's testimony when compared to reports in the medical records. *Id.* at 22. For example, in May 2016 Plaintiff self-referred for outpatient treatment at Weems Mental Health Center. *Id.* at 10. As noted by the ALJ, "[i]n contrast to his extreme difficulty sleeping to which he testified at the hearing, he reported fair sleep and appetite to the examiner at Weems." *Id.* at 10, 255. In another instance, Plaintiff testified only getting 3 to 4 hours of sleep, but "he reported to the VA that he averages 4 to 5 hours of sleep at night." *Id.* at 10, 357. The ALJ also pointed to Plaintiff's testimony that prescription medications helped some with sleeplessness. *Id.* at 10, 55. As part of the decision, the ALJ explicitly considered a medical record dated August 31, 2017. *Id.* at 23, 522-32. According to this record, Plaintiff suffers from sleep disturbance and nightmares, but he denied insomnia at this particular visit. *Id.* at 525. Based on the foregoing, substantial evidence supports the ALJ's decision not to incorporate additional limitations based on Plaintiff's alleged inability to sleep. The ALJ's interpretation of the May 17, 2017 medical note goes to the weight of the evidence and does not provide a basis for remand.

**Mental Health Records**

Plaintiff contends that the ALJ only considered mental health records through May 2017 but did not consider more recent mental health notes from July 2017 and September 2017. While at one point in her decision the ALJ did identify May 17, 2017 as the last mental status evaluation, the ALJ in fact considered mental health notes from later dates as well. Doc. [5] at 25. For example, she discussed a visit to the VA on August 31, 2017, at which time Plaintiff showed a stable mood and indicated he was taking prescribed medication. *Id.* at 23, 522-33. During this same visit, Plaintiff denied depression, anxiety, or insomnia. *Id.* at 525. The medical notes further indicated Plaintiff's behavior and dress were appropriate and mood stable. *Id.* at 525-26. The ALJ also considered progress notes from the VA mental health clinic dated "November"[1] 2017, at which time Plaintiff "reported family related stressors, irritability, and poor sleep." *Id.* at 25, 507. The medical notes revealed "a stable mood and appropriate affect, clear and concise speech, good judgment and insight, and no suicidal or homicidal ideations or hallucinations." *Id.* Plaintiff's contention that the ALJ failed to consider mental health records post-dating May 2017 is not accurate. While the ALJ appears to have misstated May 2017 as the date of the last mental health record, Plaintiff's assignment of error identifies a mere procedural imperfection. Plaintiff fails to demonstrate any prejudice from this alleged error.

## RECOMMENDATION

Based on the foregoing, the undersigned recommends that the decision of the Commissioner be AFFIRMED.

---

[1] The records cited by the ALJ (Exhibit C5F) only go through November 3, 2017. With respect to the progress notes from the mental health clinic, the ALJ appears to be referring to records from September 2017 rather than November 2017. *See* Doc. [5] at 507.

## NOTICE OF RIGHT TO APPEAL/OBJECT

Pursuant to 28 U.S.C. § 636(b)(1), any party who desires to object to this report must serve and file written objections within fourteen (14) days after being served with a copy unless the time period is modified by the District Court. A party filing objections must specifically identify those findings, conclusions and recommendations to which objections are being made; the District Court need not consider frivolous, conclusive or general objections. Such party shall file the objections with the Clerk of the Court and serve the objections on the District Judge and on all other parties. A party's failure to file such objections to the proposed findings, conclusions and recommendation contained in this report shall bar that party from a de novo determination by the District Court. Additionally, a party's failure to file written objections to the proposed findings, conclusions, and recommendation contained in this report within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions that have been accepted by the district court and for which there is no written objection. *Douglass v. United Services Automobile Association*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).

SO ORDERED AND ADJUDGED, this the 25th day of June 2019.

/s/ *Robert H. Walker*
ROBERT H. WALKER
UNITED STATES MAGISTRATE JUDGE